```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_11/13/2014__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
MARIA I. ROMAN,                                       :
                                                      :
                                                      :
                                    Plaintiff,        :        12-CV-276 (VEC)
                                                      :
                -against-                             :        OPINION & ORDER
                                                      :
SPRINT NEXTEL CORP., NEXTEL OF NEW                    :
YORK, INC., HTC CORP., HTC AMERICA                    :
HOLDING, INC., HTC AMERICA INNOVATION,                :
INC., SPRINT SPECTRUM L.P., and SPRINT                :
SOLUTIONS, INC.,                                      :
                                                      :
                                                      :
                                    Defendants.       :
---------------------------------------------------------------- :
SPRINT SPECTRUM L.P., SPRINT SOLUTIONS,               :
INC., NEXTEL OF NEW YORK, INC., and                   :
SPRINT NEXTEL CORP.,                                  :
                                                      :
                                                      :
                                    Cross-Claimants,  :
                                                      :
                -against-                             :
                                                      :
HTC AMERICA HOLDING, INC., HTC                        :
AMERICA INNOVATION, INC., HTC AMERICA,                :
INC., and HTC CORP.,                                  :
                                                      :
                                                      :
                                    Cross-Defendants. :
---------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

    Plaintiff alleges that she sustained a burn on her left breast, which developed into

complex regional pain syndrome ("CRPS"), during an overnight bus trip from North Carolina to

New York City between October 2 and 3, 2010, from a cellular phone that was manufactured by

Defendants HTC Corporation and HTC America Holding, Inc. ("HTC") and sold by Defendants

Sprint Spectrum, L.P., Sprint Solutions, Inc., and Sprint/United Management Company ("Sprint").  Sprint 56.1 ¶¶ 4-6.  She brought this action for failure to warn of that risk.  Presently before the Court is Plaintiff's motion *in limine* to preclude the defendants' engineering and warnings experts.  Dkt. 72.  The Court assumes the parties' familiarity with the facts, history, and procedural posture of the case.

## ANALYSIS

### I.  LEGAL STANDARD FOR FAILURE TO WARN

A failure to warn plaintiff bears the burden of establishing: (1) that the defendant had a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that the failure to do so was the proximate cause of a harm suffered by the plaintiff.  *In re Fosamax Prods. Liab. Litig.*, 924 F. Supp. 2d 477, 486 (S.D.N.Y. 2013); *see also Santoro v. Donnelly*, 340 F. Supp. 2d 464, 485 (S.D.N.Y. 2004).  Once the first two elements are satisfied, the Court presumes proximate causation if no warning was provided or if the warnings were inadequate to warn against the cause of the specific harm.  *In re Fosamax*, 924 F. Supp. 2d at 486.  "Failure-to-warn liability is intensely fact-specific, including but not limited to such issues as feasibility and difficulty of issuing warnings in the circumstances; obviousness of the risk from actual use of the product; knowledge of the particular product user; and proximate cause."  *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 243 (1998).

The duty to warn extends to both "latent dangers resulting from foreseeable uses of [a] product of which [the manufacturer] knew or should have known," and "the danger of unintended uses of a product provided these uses are reasonably foreseeable."  *Bee v. Novartis Pharma. Corp.*, --- F. Supp. 2d ---, No. 12-CV-1421 (JFB), 2014 WL 1855632 at *10 (E.D.N.Y. May 9, 2014) (quoting *Liriano*, 92 N.Y. 2d at 237).  "This duty is a continuous one, and requires that a manufacturer be aware of the current information concerning the safety of its product."  *Id.*

To establish a duty to warn under either theory, a plaintiff must first establish a causal link between the injury and the product, which has two components: general causation and specific causation.  "General causation 'bears on whether *the type of injury at issue can be caused or exacerbated* by the defendant's product,' while specific causation addresses 'whether, in the particular instance, the injury *actually was caused or exacerbated* by the defendant's product." *In re Rezulin Prods. Liab. Litig.*, 441 F. Supp. 2d 567, 575 (S.D.N.Y. 2006) (quoting *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 n.1 (2d Cir. 2005) (emphasis in *Ruggiero*)).

If a defendant had a duty to warn, the focus shifts to whether the defendant adequately discharged that duty.  "Liability for failure to warn may be imposed 'based upon either the complete failure to warn of a particular hazard or the inclusion of warnings that are insufficient.'" *Fisher v. Multiquip, Inc.*, 96 A.D.3d 1190, 1192 (3d Dep't 2012) (quoting *Dimura v. City of Albany*, 239 A.D.2d 828, 829 (3d Dep't 1997)).  "An adequate warning or instruction is one that is understandable in content and conveys a fair indication of the nature and extent of the danger to a reasonably prudent person." *Cooley v. Carter-Wallace, Inc.*, 102 A.D.2d 642, 646 (4th Dep't 1984).  "The sufficiency of a warning is dependent upon both the language used and the impression that the language is calculated to make upon the mind of the *average user* of the product." *Id.* (emphasis added).  "Of critical importance is whether the warning sufficiently conveys the risk of danger associated with the product and is qualitatively sufficient to impart the particular risk of harm." *Id.*

If no warning is provided, New York's "heeding presumption" dictates that the Court presume proximate cause – that is, that a user would have heeded warnings if they had been provided and that the injury would not have occurred. *Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 441 (S.D.N.Y. 1999).  However, "where a defendant can show, via 'specific facts,' that any given warning would have been futile – either because any such warnings would not have

been heeded or because the injury would have occurred, regardless of the given warnings – a defendant will have successfully rebutted" the heeding presumption. *Bee* 2014 WL 1855632 at *12.

Because the jury steps into the shoes of the average user, it does not need expert testimony to evaluate a warning; the ultimate issue of the adequacy of a warning is a question of fact for the jury based on the totality of the circumstances. *Billar v. Minn. Mining & Mfg. Co.*, 623 F.2d 240, 247 (2d Cir. 1980). If defendants produce expert evidence suggesting a warning was sufficient or additional warnings would have been ineffective under the circumstances, jurors are free to accept or disregard that testimony in favor of their own judgment. *Adebiyi v. Yankee Fiber Control, Inc.*, 705 F. Supp. 2d 287, 290-91 (S.D.N.Y. 2010).

## II.   DEFENDANTS' EXPERTS

Defendants proffer their engineering experts – Mark McNeely and Eric Lalli – to rebut Plaintiff's evidence of injury causation in order to negate the contention that they had a duty to warn in the first instance. Defendants proffer their experts on the subject of warnings – Dr. Jane Welch and Dr. Frank Gomer – to challenge proximate causation by opining either that the warnings provided were adequate to alert Plaintiff to the harm of her use or that no warning was required because the defendants had no knowledge of this alleged danger.

### a.   Standard for Admissibility

The standard for admissibility of expert testimony was discussed at length in a prior decision in this case, *Roman v. Sprint Nextel Corp.*, No. 12-CV-276 (VEC), 2014 WL 5026093 at *3-4 (S.D.N.Y. Sept. 29, 2014) (Dkt. 111), and will not be repeated here.

### b.   Engineering Experts

#### i.   Results of Exemplar Field Testing

4

Defendants' engineering experts (the "Experts") conducted a field test on September 21, 2013, approximately three years after Plaintiff's alleged injury, by traveling on the same overnight bus route from Raleigh, North Carolina to New York City under conditions designed to replicate Plaintiff's experience.  Haworth Decl. Ex. A at 3 ("McNeely Report," Dkt. 85-3).  Defendants provided the Experts with the same model cell phone as Plaintiff's (the "exemplar phone").  *Id.* at 17.  The Experts activated the exemplar phone's Bluetooth, WiFi, and 4G[1] capabilities and successfully completed a two-way phone call and internet search to verify that the exemplar phone was functioning.  *Id.*  To monitor the surface temperature of the cell phone during the trip, the Experts placed multiple thermocouples[2] on the cell phone's display screen and McNeely's skin and one thermocouple on the back of the cell phone.  The Experts also used thermocouples to measure ambient air temperature and McNeely's baseline skin temperature.  *Id.*  At the outset, McNeely's skin temperature was 35 degrees Celsius, and the cell phone's screen temperature was 30 degrees Celsius.  Cerussi Decl. Ex. FF at 5 ("Lalli Report," Dkt. 45-3).[3]

Thirty minutes into the bus ride, McNeely placed the fully-charged cell phone against his clean-shaven chest underneath a women's cotton camisole similar to the one Plaintiff wore on her trip and secured it for the remainder of the trip.  McNeely Report at 18.  At the conclusion of the trip, McNeely removed the cell phone and reported neither redness nor indications of a skin burn in the area; the phone had not stuck to his skin.  *Id.* at 29.  McNeely also reported that the

---

[1]     McNeely's report states that he was retained to conduct testing on a HTC EVO 4G mobile phone, Haworth Decl. Ex. A at 3, and that the exemplar phone was connected to the 4G network, *id.* at 17.  He also states that the "HTC EVO mobile phone operates on Sprint's network and supports third generation technology (3g) as Code Division Multiple Access 2000 (CDMA)."  *Id.* at 11.  Both Plaintiff's cell phone and the exemplar cell phone were 4G.  *Id.* at App'x C.  It is not clear whether the reference to 3G is a typographical error or is otherwise significant to McNeely's opinion.  Inasmuch as Plaintiff did not argue that it affects the admissibility of McNeely's testimony, the Court presumes that it is either a typographical error or irrelevant to the experiment conducted.

[2]     The Experts selected thermocouples that were heat conductive so that they would not interfere with the transfer of heat between McNeely's body and the cell phone.  Lalli Decl. ¶ 7.

[3]     35 degrees Celsius is 95 degrees Fahrenheit, and 30 degrees Celsius is 86 degrees Fahrenheit.

battery was "nearly fully charged," indicating that the exemplar phone "did not consume much battery life during the testing." *Id.* at 30. The results of the experiment showed that throughout the test the temperature of the cell phone and the surface of McNeely's skin were nearly the same and both were approximately 35 degrees Celsius. *Id.* at 31. The back of the phone was a few degrees cooler. *Id.* at 31. The ambient temperature on the bus was several degrees cooler at approximately 22 to 24 degrees Celsius.[4] *Id.* Lalli designed the exemplar field test and monitored the temperature readings throughout the bus ride. Lalli Decl. ¶¶ 6, 9 (Dkt. 89).

### ii. Mark McNeely's Qualifications

Plaintiff does not challenge the qualifications of Mark McNeely, Sprint's engineering expert. McNeely holds Bachelors and Masters of Science degrees in Electrical and Computer Engineering from the University of Wisconsin at Madison and has more than thirteen years of engineering experience. Haworth Decl. Ex. A-1 at 2 ("McNeely CV, Dkt. 85-2). He has extensive work experience in the design, construction, evaluation, and testing of radiofrequency ("RF") systems as an electrical engineering and computer science consultant, including conducting engineering analyses related to, *inter alia*, cellular phone communications, telecommunications products and infrastructure, wireless networks, broadband technology, biometric systems, radiofrequency identification (RFID), and solar power infrastructure. *Id.* at 1. Mr. McNeely is a Registered Professional Electrical Engineer, a Certified Fire and Explosion Investigator with the National Association of Fire Investigators, and a member of the Institute of Electrical and Electronic Engineers, the National Association of Fire Investigators, and the National Fire Protection Association, *id.* at 2, 4. He is also a peer reviewer for the *Health*

---

[4]     22 degrees Celsius is 71.6 degrees Fahrenheit; 24 degrees Celsius is 75.2 degrees Fahrenheit.

*Physics Journal* and *Radiation Research Journal*, *id.* at 4, and he has published at least four articles that specifically relate to mobile phones. *Id.* at 2.[5]

Given his background in engineering and experience in the field of mobile phone systems and operations, McNeely is qualified as an expert in his field.

### iii. McNeely's Proffered Expert Opinions

McNeely's expert opinion, based on his education and experience, is that, to a reasonable degree of scientific certainty, there was "no scientifically valid means" for Plaintiff's cell phone to cause a thermal burn on Plaintiff under the conditions of her bus ride on October 2-3, 2012. McNeely Report at 38.  He based his opinion on the field test he conducted that was described above.  *Id.*  McNeely stated that the outcome of his field testing was consistent with what he would expect from this type of cell phone when it was in an idle state for a prolonged period.  *Id.* And, consistent with his expectations, the battery on the exemplar phone "had not been depleted by any excessive heating."  *Id.*  He also opined that Plaintiff's skin injury is "inconsistent with the claimed overheating of an HTC EVO mobile phone since it is localized."  *Id.*  He found "no credible means of achieving localized heating in a line of the phone display."  *Id.*  Finally, McNeely claims that his analysis refuted the opinions of Plaintiff's engineering expert, Roger Boyell, and showed them to be inaccurate, inconclusive and not credible.  *Id.*

Plaintiff challenges the reliability of McNeely's field testing and the conclusions drawn from that test.  Pl. Mem. at 5, 16.  She also challenges McNeely's qualification to offer his opinion that Plaintiff's burn was inconsistent with a burn caused by the phone because he is not qualified as an expert in the dynamics of heat transfer between an electronic device and the human body.  Pl. Mem. at 5.

---

[5]     All of McNeely's published articles relate to radiofrequency output from mobile phones.  *Id.*

### iv.   Reliability of McNeely's Opinions

Causation is the threshold issue in this case – if Plaintiff does not convince the jury that her cell phone caused her alleged burn, then her claim fails.  McNeely's expert opinion on the ability of a cell phone in normal operation to get hot enough to cause a skin burn could be helpful to the trier of fact in determining a fact at issue.  Accordingly, it should be admitted if it is based upon sufficient facts or data, the product of reliable principles and methods, and the principles and methods have been applied reliably to the facts of the case.  *See* Fed. R. Evid. 702. Plaintiff can, of course, attack the opinion by highlighting any deficiencies in it through "vigorous cross-examination [and] presentation of contrary evidence." *Amorgianos v. Nat'l R.R. Passenger Corp*., 303 F.3d 256, 267 (2d Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 596 (1993)).

The Court finds that the exemplar field testing was the product of reliable principles and methods.  The experts replicated the conditions of Plaintiff's bus ride as closely as practicable under the circumstances.  Three years had passed since Plaintiff's alleged injury, but that was in part due to the timing of this action's initiation and also in part due to Plaintiff's belated assertion that her injury was caused by thermal heat transferred from the cell phone.  By the time an exemplar field test became relevant to the litigation, Plaintiff's original phone was no longer available for testing.  McNeely Report at 13.  The experts used the same model of cell phone and activated the applications that they knew to be functioning during Plaintiff's bus ride based on her deposition testimony.  *See id.* at 8-10.  They charged the phone to full charge just as Plaintiff testified she had before her trip, and they left the phone against McNeely's bare skin while monitoring the temperature of the phone and McNeely's skin.  The experiment showed that the temperature of the phone never exceeded 35.5 degrees Celsius, which is not sufficiently hot to burn human skin.  McNeely Report at 33.

8

Although the Plaintiff complains about various aspects of the experiment,[6] an exemplar field test almost never exactly replicates the original conditions of an accident – the goal is to come close enough to produce relevant results. *See Daubert,* 509 U.S. at 579  ("[I]t would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science.").  All of Plaintiff's concerns and objections "go to the weight, not the admissibility" of the expert testimony.  *Amorgianos*, 303 F.3d at 267 (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).

### v.  Eric Lalli's Qualifications

HTC's proffered engineering expert, Eric Lalli, holds a Bachelor of Applied Science in Metals and Materials Engineering from the University of British Columbia and has over 25 years of experience in failure analysis, loss consulting, safety consulting, and quality management. Cerussi Decl. Ex. FF at 1 ("Lalli CV" at Dkt. 45-3).  Plaintiff does not challenge Lalli's qualification as an expert forensic engineer, but argues that Lalli is not qualified to opine on dynamics of heat transfer from the cell phone to Plaintiff's body and sources of skin burns.  Pl. Mem. at 19.

Lalli is a Professional Engineer, is certified by the American Society for Quality Control as a Certified Quality Engineer, and is a Fellow of Engineers Canada with the Canadian Council of Professional Engineers.  Lalli CV at 3.  Lalli has worked as a professional engineering consultant for LWG Consulting since February 2013, providing expert witnesses testimony in litigation and other legal proceedings involving product failure analysis and human factor

---

[6]      Plaintiff argues that McNeely's opinions should be precluded because: he used an exemplar and not Plaintiff's phone; Plaintiff does not remember what applications were running when she was allegedly burned so the results of the experts' test may be inaccurate; the operational software on the two phones *may* have been different; the experts' testing did not deplete the battery whereas Plaintiff testified that her battery was significantly depleted over the course of her trip;  and the report failed to compare the number, types, and distances of cellphone towers. Pl. Mem. at 16.

analysis. *Id.* at 1.  His areas of expertise are in metallurgy, polymers, composites, ceramics, refractories, concrete, and building materials. *Id.*

The Court finds Lalli is qualified to testify regarding his expert opinions based on his education and experience as a forensic materials engineer.

### vi.  Lalli's Proffered Expert Opinions

Lalli's expert opinion, to a reasonable degree of engineering certainty, is that the maximum temperature of the test subject's skin and the surface of the exemplar phone was 35.5 degrees Celsius, which is below the minimum threshold for a surface burn from a nine-hour exposure to a heat source.  Cerussi Decl. Ex. FF at 5 ("Lalli Report" at Dkt. 45-3).  By extension, Plaintiff's cell phone could not have caused a skin burn on her bus ride from Raleigh to New York City on October 2-3, 2010. *Id.* at 9.  Lalli also opined that the cell phone was heated by the subject's body, not vice versa. *Id.*  Thus, in order for the cell phone to have burned the skin, the subject's body temperature would have had to increase by 9.5 degrees Celsius to 44.5 degrees Celsius. *Id.*  He formed this opinion based on the exemplar field testing, an examination of the materials comprising Plaintiff's cell phone, and his expert knowledge of materials engineering and principles of heat transfer.  Finally, Lalli designed the field test and monitored the temperature recordings throughout.  Lalli Report at 3-4.

### vii.  Reliability of Lalli's Opinions

To the extent Lalli's report reiterates what the Court already determined was reliable in the exemplar field test, it is admissible under Rule 702 for the same reasons McNeely's opinions are admissible.  Plaintiff asserts that Lalli's report is not admissible because it merely duplicates McNeely's opinion.

HTC argues that the opinions of the two experts are distinguishable because Lalli's opinions are based on his expertise in materials science and heat transfer.  HTC asserts that such

knowledge could contribute to the jurors' understanding of whether the cell phone could have caused Plaintiff's injury, which is beyond the expertise that McNeely possesses.  HTC Mem. Opp. at 15.  The Court agrees with HTC.

The Court may exclude Lalli's opinion if its probative value is substantially outweighed by, *inter alia*, a danger of confusing the issues, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  Both experts reached the same conclusion from the exemplar field testing: that Plaintiff's cell phone could not have caused a thermal burn under the circumstances of her bus trip from North Carolina to New York because neither the surface temperature of the phone nor the surface temperature of McNeely's skin approached the requisite temperature. How they individually got there only has independent probative value if their methodologies contribute the jury's understanding of a fact at issue and otherwise pass the muster of Rule 702 – otherwise, the ultimate opinions are unnecessarily cumulative.  Because Lalli designed the field experiment, he can explain the mechanics and soundness of the field conditions.  Moreover, he monitored and recorded the readings of the thermocouples and can explain to the jury the science behind the heat transfer that occur between an electronic device and the human body. Accordingly, the Court concludes that his testimony is reliable and has probative value separate from McNeely's opinion.  It is therefore admissible.

Lalli relied on his expertise in the thermal conductivity of the different materials in a cell phone to conclude that the "controlling factor to increasing skin temperature under the skin was the body temperature" and that the "cellular phone was not a heat source driving temperature increase to the skin surface."  Lalli Report at 6.  Lalli reached this conclusion because: (1) the temperature of the exemplar phone started at 30 degrees Celsius and rose to 35 degrees Celsius shortly after it was placed next to McNeely's skin, whereas the temperature of the skin cooled during the same period; (2) the cellular phone temperature remained slightly below the skin

11

temperature suggesting that the heat flow was from the skin to the exemplar phone; and (3) the temperature of the back of the exemplar phone was slightly lower than the front of the phone. *Id.* at 5-6. His expert opinion, based on these outcomes, was that the transfer of heat was from body to phone and not phone-to-body as Plaintiff contends. *Id.* at 9. This reasoning is the product of reliable principles applied reliably to the facts, and is not duplicative of McNeely's analysis relating to the mechanical aspects of the cell phone's functionality. It therefore meets the requirements of Rule 702, and is not subject to exclusion under Rule 403.

Lalli's materials analysis and heat transfer analysis would also assist the trier of fact to understand the facts at issue. Lalli's report provided scientific information on four types of materials whose heat conductivity were relevant to the heat transfer between the exemplar phone and Plaintiff's skin: (1) the display screen, "comprised of multiple layers of materials with the predominate layer being glass," which is a "relatively poor conductor of heat," (2) the side and back casing of the cell phone, made of a "polymer material" that is "also a relatively poor conductor of heat," (3) the "internal components of the cellular phone" (the so-called "guts" of the device), which "are comprised of a number of materials enclosed in a tight space," and which "conduct[] heat in all directions towards the front, back and sides of the cellular phone," and (4) human skin, a "porous membrane that is a relatively good conductor of heat." Lalli Report at 7.

In sum, Lalli's testimony is admissible to explain to the jury the design of the exemplar field testing, the dynamics of heat exchange, and the conclusions he reached applying his expertise to the results of the field testing.

### c.  Warnings Experts

#### i.  Dr. Jane T. Welch's Qualifications

Dr. Jane Welch's educational background is primarily in English, but her professional background is in product safety communication. Dr. Welch holds a bachelor's degree in English

from Mount Holyoke College and master's and doctoral degrees in English from Syracuse

University.  Haworth Decl. Ex. 6 at 1-2 ("Welch Report," Dkt. 85-6).  She is a member of the

Human Factors and Ergonomics Society and the Safety Council.  *Id.* at 2.  She has more than 25

years of experience relating to the communication of product safety information between

manufacturer and consumer and is the president of a communications consulting firm that

specializes in this field.  Haworth Decl. Ex. 6 at 1 ("Welch CV," Dkt. 85-5).   Manufacturers

from diverse industries enlist her expertise to craft product safety warnings and manuals, to

evaluate existing product safety messages (both academically and through consumer research

and focus groups), and to rewrite product safety messages that have become outdated or are

inadequate.  Welch Report at 1.  The Court finds that Dr. Welch is qualified as an expert by her

knowledge, skill, and professional experience to provide her opinions on the warnings issue in

this case.

### ii.  Dr. Welch's Expert Opinions

Dr. Welch advances essentially two opinions, both based on the assumption that Plaintiff

is able to satisfy her burden of proof to establish causation.  Dr. Welch's first opinion is that,

from a manufacturer's perspective, the nature and circumstances of Plaintiff's injury were not

foreseeable and therefore the Defendants could not have warned against this sort of risk.  *Id.* at 4-

5.  In Dr. Welch's expert opinion, Sprint and HTC would have had no reason to anticipate that an

injury like Plaintiff's would occur because Plaintiff's cell phone model passed all FCC safety

testing and complied with all regulatory standards.  Moreover, Plaintiff's specific use was not

within the range of predictable behavior.  *Id.* at 5.  Based on her experience crafting warning

guides like the ones that accompanied Plaintiff's cell phone, manufacturers are concerned about

"overwarning," i.e., warning against risks that an ordinary user would perceive as benign or so

attenuated that the convenience of the desired use outweighs the perceived risk of

noncompliance with a safety warning.  *Id.* at 3.  Put differently, manufacturers have learned that issuing robust warnings against every conceivable risk, no matter how remote, is counterproductive to safe use of a product because the warnings against more likely risks get lost in the forest of warnings regarding more remote risks.  *Id.*  Accordingly, Dr. Welch will explain that manufacturers attempt to strike the safest balance by not issuing warnings against conditions that do not truly merit a warning or where a warning cannot reasonably be expected to result in safer behavior.  *Id.*  In Dr. Welch's opinion, the risk associated with Plaintiff's placement of the cell phone in the inner layers of her garments and leaving it there for a nine-hour bus trip was a risk of use that was so attenuated that it would not have been foreseeable; therefore, no reasonable manufacturer would warn against that risk.  *Id.* at 5.

Dr. Welch's second opinion is that the cumulative effect of the warnings provided was adequate to alert Plaintiff to the risk of using her cell phone as she did, so additional warnings would have been futile.  *Id.*  Dr. Welch acknowledges that there was no warning against Plaintiff's specific use of the product, but her expert opinion is that, when read as a whole, the information conveyed in the warnings guides adequately warns an average end user that she should not leave the phone against bare skin for a prolonged period of time.  *Id.* at 4.  Dr. Welch further opined that a warning against the risk of this use would be futile because a consumer reading the warning would dismiss it as meaningless.  *Id*. at 5.  She explained that "repeated benign experience with a familiar product or practice can persuade a user that nothing negative will happen," making it less likely the warning will be heeded.  *Id.* at 3.

### iii.  Reliability of Dr. Welch's Opinions

Plaintiff contests the very notion that a person can be an expert in warnings and argues that, even if there can be such an expert, Dr. Welch's opinion should be precluded because she did not conduct any empirical research that would be applicable in this case.  Pl. Mem. at 2-3.

14

As to Plaintiff's first argument, *Kumho Tire* rejected such a limited view of "expert" testimony under Rule 702.  The Supreme Court recognized that any field of specialized "knowledge might become the subject of expert testimony," so long as the expert witness has "a reliable basis in the knowledge and experience of [her] discipline" to form an expert opinion.  526 U.S. at 147-48. Because Dr. Welch's specialized knowledge in the design and communication of product warnings satisfies this requirement, her opinion testimony is admissible so long as it otherwise meets the standards set forth in Rule 702.  As for Plaintiff's second argument, Rule 702 explicitly permits experts to testify to opinions, including those that are not based on firsthand knowledge or observation.  *Kumho Tire*, 526 U.S. at 148 (citing *Daubert*, 509 U.S. at 592).

In short, Dr. Welch's opinion testimony is admissible.  Her specialized knowledge will assist the trier of fact to understand user behavior and perception of warnings beyond the everyday experience of a layperson to determine whether a warning would have been futile.  Her opinion is based on applying her years of experience evaluating and constructing warnings to the injury Plaintiff allegedly suffered and the warnings provided with Plaintiff's cell phone.  If Plaintiff believes Dr. Welch's testimony lacks credibility or a sufficient foundation, she will have the opportunity to cross-examine and to argue to the jury the appropriate weight they should accord Dr. Welch's opinions.

### iv.  Dr. Frank E. Gomer's Qualifications

Dr. Frank Gomer's expertise is in the field of human factors and safety engineering.  He has a Ph.D. in Human Factors Engineering and Psychology from Washington University in St. Louis and a Bachelors of Science Degree in Psychology from Colgate University.  Cerussi Decl. Ex. EE at 16 ("Gomer CV" at 4, Dkt. 45-2).  He is a member of the American Society of Safety Engineers, the Human Factors Engineering and Ergonomics Society, and Safety Standards Technical Panel for Underwriters Laboratories, Inc.  *Id.*  He has 30 years of experience providing

forensic, safety, and human factors engineering analyses for litigation purposes and has been

qualified as an expert in numerous federal and state trials.  *Id.* at 1.  During his career, he has

determined the requirements for product warnings and safety instructions and has published

articles relating to conditions that influence the effectiveness of product warnings.  Gomer Decl.

¶ 13 (Dkt. 88).  The bulk of his experience is in product testing and analysis and not in

communicating safety standards to an end user.  Given his background and experience in the

field of safety engineering, he could be qualified to testify on the *safety* of Plaintiff's cell phone,

and under some circumstances could be qualified as an expert in safety warnings.  As explained

below, however, he is precluded from providing testimony regarding the opinion he reached in

this case.

### v.  Dr. Gomer's Expert Opinions

Dr. Gomer's expert report concludes that the Defendants had no duty to warn of a risk of

thermal hazard from the cell phone because there is no thermal hazard.  According to his report,

his "Expert Opinion[] and Conclusion[]" is that:

> The manufacturer of this smart phone did not fail to place instructions, advisories,
> cautions, or warnings of a thermal hazard on the smart phone's packaging and/or
> in the user manual since, contrary to the erroneous allegations of the Plaintiff, a
> thermal hazard does not exist for a normally functioning, digital, wireless HTC
> EVO 4G smart phone.  It would have been inappropriate and incorrect, from a
> safety engineering perspective, to warn of a nonexistent thermal hazard.

Cerussi Decl. Ex. EE at 11 ("Gomer Report" at 5, Dkt. 45-2).  He based his opinion that the cell

phone did not pose a thermal hazard on "a March 5, 2010 HTC report of the device's surface

temperature, at several locations, after 20 minutes of voice communication and text messaging,"

and from an evaluation of the validity of the exemplar testing conducted by Defendants' experts.

Gomer Report at 4.  Dr. Gomer reviewed Plaintiff's expert report as well, but concluded that

"Mr. Boyell [Plaintiff's engineering expert] was completely and significantly in error when

estimating that the skin temperature would exceed 45 degrees Celsius" based on the results of his testing. *Id*.[7]

Dr. Gomer explained that for a warning to be adequate, it "must identify the hazard, the steps to be taken by the user to avoid contact with the hazard, and the risk of harm should exposure to the hazard occur." *Id.* But he also stated that there is a "fundamental requirement" not to issue warnings for "non-hazardous or non-dangerous conditions." *Id.* Therefore, there could "not [have been] a failure to warn about a nonexistent thermal hazard." *Id.*

### vi. Reliability of Dr. Gomer's Opinions

Plaintiff does not contest Dr. Gomer's qualifications as an expert human factors and safety engineer. Pl. Mem. at 4. Plaintiff challenges whether he is qualified to provide an opinion that Plaintiff's burn was not caused by her cell phone, which, according to Plaintiff, is the basis of his expert opinion that no warning was required. *Id.* at 4. The Court agrees that Dr. Gomer is precluded from testifying, but for different reasons.

Dr. Gomer's opinion that there is no duty to warn against a non-existent hazard is not an "opinion," it is a legal fact. Before the jury considers the adequacy of a warning, it must first determine that Plaintiff met her burden of establishing that the product caused her injury. *Hunt v. CNH America, LLC*, 511 F. App'x 43, 48 (2d Cir. 2013) (affirming summary judgment for the defendant on a failure-to-warn claim because the plaintiff failed to put forth any evidence of causation). "As a general rule an expert's testimony on issues of law is inadmissible" because it "encroach[es] upon the court's duty to instruct on the law." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

---

[7]     In its September 29, 2014, Opinion and Order denying Defendants' Motions for Summary Judgment and granting in part Defendants' motion *in limine*, *Roman v. Sprint Nextel Corp.*, No. 12-CV-276 (VEC), 2014 WL 5026093 (S.D.N.Y. Sept. 29, 2014), the Court reached the same conclusion regarding the reliability of Boyell's testing procedures.

Even if Dr. Gomer's opinion were not precluded on that basis, his proffered testimony suffers from an additional flaw that precludes admissibility under Rule 702: it invades "the role of the jury in applying the law to the facts before it" by weighing the credibility of the competing engineering experts. *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *see Kumho Tire*, 526 U.S. at 153 ("[T]he jury must decide among the conflicting views of different experts, even [when] the evidence is 'shaky.'"). Although an expert's opinion may be put before the jury if it will "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), and an expert "may opine on an issue of fact *within* the jury's province," Dr. Gomer may not *invade* the jury's province by "giv[ing] testimony stating ultimate legal conclusions based on those facts." *Bilzerian*, 929 F.2d at 1294 (emphasis added).

## CONCLUSION

In sum, Plaintiff's motion to preclude defendants' experts is GRANTED in part and DENIED in part.

Plaintiff's motion to preclude the testimony of Mark McNeely, Eric Lalli and Dr. Jane Welch is DENIED. McNeely will be permitted to testify on the matter of the exemplar field testing conducted with Eric Lalli, and his expert opinions on the properties of cell phones and their capacities to cause Plaintiff's injury. Lalli will be permitted to testify to on the matter of the exemplar field testing and the design of that test, as well as his opinions on the thermal conductivity of the various materials at issue. Dr. Welch will be permitted to testify on the issue of how an average consumer would perceive the warnings provided and whether additional warnings would have been futile.

Plaintiff's motion to preclude Dr. Gomer's testimony is GRANTED.

The Clerk of Court is directed to terminate Docket Entry 72.

**SO ORDERED.**

**Date:  November 13, 2014**
           **New York, NY**

**VALERIE CAPRONI**
**United States District Judge**